UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COURTHOUSE NEWS SERVICE, <br><br> Plaintiff, <br><br> v. <br><br> SARA OMUNDSON, in her official capacity as Administrative Director of Idaho Courts, <br><br> Defendant. | Case No. 1:21-cv-00305-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Sara Omundson's Motion to Stay Injunction Pending Appeal. Dkt. 96. Due to time constraints, the Court expedited briefing on this Motion. Dkt. 97. Plaintiff Courthouse News Service ("CNS") timely filed its opposition to Omundson's request (Dkt. 98), and Omundson replied (Dkt. 100).

Having determined the facts and legal arguments are adequately presented in the briefs, and the decisional process would not be significantly aided by oral argument, the Court decides the Motion without argument. *See* Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court GRANTS Omundson's Motion.

## II. BACKGROUND

CNS is a nationwide news service founded more than thirty years ago to provide

coverage of civil lawsuits to the public. It offers a variety of publications to thousands of subscribers across the United States. Omundson is the Administrative Director of Idaho Courts and, in her official capacity, is responsible for the administration of Idaho's e-filing and public access system used by courthouses in each of Idaho's 44 counties.[1]

Early on in this case, the Court denied a Motion to Dismiss filed by Omundson and simultaneously denied a Motion for Preliminary Injunction filed by CNS. Dkt. 40; *Courthouse News Serv. v. Omundson*, 598 F. Supp. 3d 929 (D. Idaho 2022). One of the Court's primary findings in that decision was that discovery was necessary to flesh out the difficult questions presented in this case. *Id*. at 946.

Following discovery, the parties filed cross-motions for summary judgment. Dkts. 60, 61. The Court held oral argument on the motions (Dkt. 84) and, ultimately, issued a decision in CNS's favor. Dkt. 86; *Courthouse News Serv. v. Omundson*, 2024 WL 4349112 (D. Idaho Sept. 30, 2024). The Court held that: 1) CNS had met its burden in establishing that it had a qualified First Amendment right of access to newly-filed civil lawsuits in Idaho (and that the right attaches when a complaint is submitted to the e-filing system), and 2) Omundson's current restrictions on that right were not narrowly tailored to serve her interests. *Id*. at *15. The Court entered a declaratory judgment finding that Omundson's policies and procedures were unconstitutional. *Id*.

Considering its finding on the constitutional issues, the Court ordered Omundson to revamp Idaho's e-filing system. The Court specifically noted that it was "not telling

---

[1] Additional factual background can be found in the Court's prior orders—Dkt. 40, at 2–6; Dkt. 86, at 4–5—and is incorporated by reference.

MEMORANDUM DECISION AND ORDER - 2

Omundson *how* she has to change her system," only that "the *current* method is untenable." *Id*. The Court gave Omundson 90 days to "bring her policies and procedures into substantial compliance with the Court's ruling . . . ." *Id*. at *15.

Omundson appealed the Court's decision and judgment. Dkt. 90.

Omundson then filed the instant Motion to Stay Injunction Pending Appeal, asking the Court to stay its order that she change Idaho's e-filing system while her appeal is pending before the Ninth Circuit. Dkt. 96-1. Because the date of compliance with the Court's order is fast approaching (December 29, 2024), Omundson asked the Court to speed up briefing (and a decision) on the Motion or, at the very least, extend the date of compliance until a decision on the Motion could be issued. *Id*. at 3.

The Court took the route of expedited briefing (Dkt. 97) and the issue is now ripe for adjudication.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 62(d), a District Court is vested with discretion to stay an injunction pending appeal to preserve the status quo. *See e.g. Mecinas v. Hobbs*, 2020 WL 13865449, at *2 (D. Ariz. July 10, 2020). The Rule states:

> While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(d).

"Although a notice of appeal will ordinarily divest a district court of jurisdiction over the matters being appealed, the district court 'retains jurisdiction during the pendency

MEMORANDUM DECISION AND ORDER - 3

of an appeal to act to preserve the status quo.'" *Kollenburn v. Cnty. of Clackamas*, 2021 WL 1842148, at *2 (D. Or. Mar. 16, 2021) (quoting *Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001)).

"[T]he standard for evaluating a request for stay pending appeal is similar to the standard for deciding a motion for preliminary injunction." *Id.* at *2, see also Reclaim Idaho v. Little*, 2020 WL 8254279, at *1 (D. Idaho June 29, 2020) ("A stay pending appeal overlaps with the function of a preliminary injunction—each prevents some action before the legality of that action has been conclusively determined." (cleaned up)).

"Courts consider four factors in assessing the propriety of a stay: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Kollenburn*, 2021 WL 1842148, at *1 (citing *Latta v. Otter*, 771 F.3d 496, 498 (9th Cir. 2014)). While the first two factors are the most important, courts in the Ninth Circuit generally apply these factors in a sliding scale balancing test. *Id*.

The party seeking stay of an injunction pending appeal bears the burden of showing entitlement to a stay. *Id.* at *1. The decision to grant a stay pending appeal is discretionary and should be evaluated based on "the circumstances of the particular case." *Id.* (quoting *Washington v. Trump,* 847 F.3d 1151, 1164 (9th Cir. 2017)).

## IV. DISCUSSION

Before addressing the specific factors, the Court will make some generalized comments about certain themes that run throughout the parties' briefs.

To begin, the Court finds many of Omundson's arguments in favor of a stay misplaced, incorrect, or exaggerated. For example, Omundson repeatedly claims that CNS has "not articulated any particular harm" that would occur were the Court to enter a stay of its decision other than "general averments that a [] constitutional injury automatically constitutes irreparable harm." Dkt. 100, at 2. *See also id.* at 4-5. But this is not true. In addition to what might be considered generalized constitutional harms—which are valid harms to be sure—CNS specifically referenced the length of the appeal as a harm. It is quite likely that this appeal will last not just months, but possibly years. Dkt. 98, at 13, 13 n.11, 15. Thus, a stay would harm CNS in that it would continue to have delayed access to civil complaints in Idaho—unconstitutionally delayed access as the Court held—for the foreseeable future. That is a harm. And such a harm was clearly articulated by CNS, contrary to Omundson's assertions.

Omundson also claims she will have to implement the Auto Accept feature in the state's e-filing system in the absence of a stay, and that this will wreak havoc on the Idaho Court system. Dkt. 100, at 4. Additionally, she claims it is foreseeable that "at least a handful of complaints will become time-barred because filing errors were not corrected prior to the statute of limitations running." *Id.* The Court does not understand why this would be the case. As the Court explained in its prior decision, Idaho's existing rules indicate that even if errors are present and need to be corrected, the original date of filing still stands for statute of limitations purposes. *Courthouse News Serv. v. Omundson*, 2024 WL 4349112, at *9. Even then, Omundson has already conceded that rules could be modified to comport with this change. *Id*. at *12.

MEMORANDUM DECISION AND ORDER - 5

Continuing this argument, Omundson seems to hinge her arguments—as she did before—on nuances and wordsmithing. She reminds the Court that, if Idaho implements Auto Accept, cases become civil actions instantaneously upon filing and are immediately assigned to a judge. If that happens, Omundson claims the Idaho judiciary will have to vest county clerks with the power to "dismiss lawsuits pending before district judges" if errors are found. Dkt. 100, at 4. Again, this seems like a hyperbolic problem with a rather simple solution. As is done in federal courts across the nation—and state courts as well—errors can be remedied after filing without materially affecting a filing party's rights *and without a judicial officer's intervention*. And again, if the state of Idaho needs to tweak a procedural rule or two to make that happen, so be it. The Court has found Omundson's system is unconstitutional. She does not get to come in now with administrative difficulties and claim those trump the Court's ruling. That ship has sailed. Omundson needs to take whatever steps are necessary to comply with the Court's decision. Thus, the Court strongly disagrees with Omundson's conclusion that Auto Accept "harms Idaho's court system and the public." Dkt. 11, at 3.[2]

Finally, both sides miss the mark on costs. Omundson claims her only option at this point is to pay a $108,000 subscription fee to access additional features and that this is onerous on Idaho taxpayers. But that completely discounts the fact that other courts have

---

[2] Relatedly, CNS's argument that Omundson will not face any harm in implementing the Court's order is also not quite right. Omundson will incur time and expense in making the change ordered by the Court. She will have to train employees and there will be some growing pains as a new system is implemented throughout the state. Whether these are "harms" or just "realities" is beside the point. Omundson will face "harm" in these ways, but she will also be harmed if she revamps Idaho's entire system and then the Court of Appeals reverses the Court. Then she has incurred a great deal of time and expense for no reason.

MEMORANDUM DECISION AND ORDER - 6

implemented their own systems (for as little as $12,500) *and* that Idaho was already apparently working on a system of its own. *Id*. at *15 n.15. Why either of those options cannot be used is unclear. But CNS's argument regarding cost is not a great fit either. CNS bases its arguments on costs (and more broadly on how it thinks any changes will unfold) almost entirely on what happened in Vermont. It argues Vermont faced a similar ruling as Omundson now faces from this Court, it implemented the Auto Accept feature (at no cost), and that everything worked out smoothly. While there may be similarities between the situations in Vermont and Idaho, there are obvious differences (e.g. local filing rules, procedures, subscriptions) that could affect the overall costs of compliance with the Court's order. The Court would have rather seen a local comparison than one from across the country.

So, setting aside these general comments about both sides' rather overblown arguments, the Court settles into the relevant factors.

**A. Likelihood of Success**

While this is arguably the most critical factor that must be considered, it always tends to be the most troublesome for the Court because it places the Court in a position where it must, in practice, question the validity of its own holding. Omundson repeatedly points out that the Court itself noted this case presented a lot of tough questions and "close calls." This is true. But lots of cases present close calls. Otherwise, they wouldn't become lawsuits in the first instance. So, the fact that this was a tough case—and took the Court some time to resolve—is not in itself reason to grant a stay of the decision.

Turning to the merits, Omundson claims she is likely to find success on one or more

MEMORANDUM DECISION AND ORDER - 7

of her claims on appeal. She lists—as non-exclusive examples—the differences between this case and the seminal and binding *Planet III*[3] case; the legal definition of "judicial documents" in e-filing procedures; and the principle of abstention.

Taking the matters up in reverse order, the Court does not find Omundson has a likelihood of success on her abstention argument. As the Court explained previously, while Omundson is correct that there is a "circuit split" on this particular issue—namely whether a federal court should abstain from hearing cases like this one that involve the administration of state court judicial systems—the so-called split is "heavily tilted against Omundson." *Courthouse News Serv. v. Omundson*, 598 F. Supp. 3d at 940. And, as the Court noted, the Ninth Circuit has already rejected this very argument. *Id.* (citing *Planet III*). Thus, the Court is of the strong opinion that Omundson's appeal of this issue would be an exercise in futility and does not weigh in favor of a stay.

Omundson's second example about judicial documents and the technical definitions of certain words worries the Court to a certain degree. The arguments are not misplaced. Definitions are, of course, important. But Omundson has taken some liberties in this case— that the Court deemed "mental gymnastics [and] creative arguments"—to support her purported position on these words. And then she modified her position when things didn't go her way. And then she modified her position again. *See Courthouse News Serv. v. Omundson*, 2024 WL 4349112, at *10. The Court documented the creative shift in

---

[3] *Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020).

Omundson's arguments each time she was met with a conclusion she did not like. *Id.*[4] The Court emphasizes again that it has nothing against strong advocacy and the tireless pursuit of a just result. But at a certain point, Omundson is going to have to accept the definitions the Court finds appropriate and implement them; instead of returning with another way to define the term that suits her view of the case.

That said, this argument is more persuasive than the abstention argument. The Court took its lead on the definitions at issue in this case from Idaho's Rules for Electronic Filing and Service (confusing as they were) and from other district and circuit court decisions. The Court's conclusions here echoed the interpretations and conclusions from those cases and districts. Thus, the Court does not see why Omundson would prevail on appeal of this matter. But it's arguably a closer call.[5]

Finally, *Planet III*. This is the only argument the Court finds has some weight to it. As discussed extensively in the Court's prior two decisions, the Ninth Circuit's decision in *Planet III* set forth the applicable legal framework for the questions at issue in this case.

---

[4] This continues to this day to some degree. In her Motion, Omundson appears to imply the Court erred in its holding concerning when a document is deemed "filed," because the Court used the word "Odyssey" when referring to Idaho's system. Omundson clarifies a case is first submitted to the "eFile & Serve" system and, only after review, is it moved to the "Odyssey" system. The Court could have done a better job with its terminology to avoid confusion and/or to avoid another opportunity for Omundson to tweak her definition and application of the word "filed" and "submitted." But the Court's holding remains the same: "filed" means the moment a party uploads a document to Idaho's system—whatever its name. *See Courthouse News Serv. v. Omundson,* 2024 WL 4349112, at *11 ("The Court's finding today is that 'filed' is defined as the moment a complaint is sent or uploaded to the Court's system.").

[5] As the Court outlined in its first decision in this case, there are some nuances with *Planet III's* definition of "filing" and "received" and what bearing, if any, those would have in this case. *Courthouse News Serv. v. Omundson*, 598 F. Supp. 3d 929, 943 (D. Idaho 2022). The primary reason this *may* be important is because the filings at issue in *Planet III* were filed by hand (in paper format), as opposed to electronically. Subsequent cases—within the Ninth Circuit and without—have held there is no distinction between the two types of filings. The Court tends to agree. Nevertheless, it is true the Circuit was referring to a *mode* of filing not precisely at issue in this case and that *could* make a difference in this appeal.

MEMORANDUM DECISION AND ORDER - 9

The tricky part about *Planet III,* however, is this: while the Circuit held that a party does not have a First Amendment right to "immediate, pre-processing access to newly filed complaints," when applying the framework set forth in *Planet III* to facts such as those at issue in this case, immediate access is essentially the result. *Planet III*, 947 F.3d at 594. As the Court deliberately noted in its prior decision: "the balance between 'CNS doesn't get immediate access' and 'Omundson can't unreasonably delay access' puts the Court in a bit of a quandary." *Courthouse News Serv. v. Omundson*, 2024 WL 4349112, at *15. CNS itself notes this is a "subtle" distinction. Dkt. 98, at 10. The Court cannot predict what a hypothetical Ninth Circuit panel will do when presented with this question. It believes the principles—if not the outright holding—from *Planet III* support its decision in this case as to the "immediate" vs. "un-delayed" dilemma. The Court applied the correct framework to the "fact-intensive" questions at issue in this case and is confident in its decision. *Id*. at *10–*15. Notably, many other Courts have reached similar conclusions as the Court did here. *Id*. at *1. The Court's decision was not an outlier or anomaly.

Nevertheless, the Court understands Omundson's argument that some of the nuances of *Planet III*—paper vs. electronic filing, the specific restrictions at issue, and the delicate balance between "immediate" and "un-delayed"—*could* reasonably be viewed differently by different jurists and result in a differing outcome. This weighs marginally in favor of Omundson's likelihood of success argument and, therefore, a stay.

### B. Injury to Omundson / Injury to CNS

As noted, the Court feels Omundson's arguments here are somewhat overblown. The Court ordered what it ordered. That there would be inevitable growing pains in a state-

MEMORANDUM DECISION AND ORDER - 10

wide change are understandable, but that is just part of the process.

The most persuasive argument here is what the Court noted at the outset of this case—that if the Court immediately required Idaho to change its entire system, but later changed its mind, Omundson would have expended a great deal of time and expense for nothing. *Courthouse News Serv. v. Omundson*, 598 F. Supp. 3d at 945. Now, the Court was expressing concern about the lack of evidence (at that time) in the record and how it would be difficult to decide the questions without more discovery. The Court's final decision—now on appeal—was based upon that complete record. But the general principle is still valid: if the Circuit were to reverse the Court, absent a stay, Omundson will have incurred a lot of time, expense, training, and overall change for no reason. This weighs slightly in favor of a stay and maintaining the status quo until the matter is finally settled.[6]

However, also as noted, the Court *disagrees* with Omundson that CNS will not face *any* harm if the Court grants her motion and enters a stay. Omundson's appeal may take quite some time to resolve which means CNS will not have the benefit of the Court's ruling and injunction which, in turn, means it will continue to have delayed access to newly-filed civil complaints in Idaho. This is a harm and weighs against a stay.[7]

One thing that is slightly persuasive to the Court in breaking this "tie-breaker" of

---

[6] That said, this always bothers the Court because if it doesn't enforce its orders, then every party who loses at the district court and is ordered to do something will just ask for a stay pending appeal and avoid their duties.

[7] The bottom line is one side will suffer some "harm" while this case is on appeal. Absent a stay, Omundson will be harmed by incurring what may ultimately be unnecessary costs. However, with a stay, CNS will be harmed because the Court's ruling that CNS has been suffering a constitutional depravation is held in abeyance, resulting in no change (i.e. a *continuing* harm).

MEMORANDUM DECISION AND ORDER - 11

harms is Omundson's argument that CNS has been functioning during the pendency of this litigation without any *significant* impairment. CNS did not move for a preliminary injunction at the outset of this case, it agreed to reasonable timeframes for discovery and motion practice, and it never sought expedited briefing. Now, as the Court observed above, it also is of the opinion that, despite her reservations, Omundson would be able to implement and efficiently manage any changes to Idaho's e-filing system as well. In other words, she could function during this appeal without *significant* impairment (even if there were initial time and costs associated with the change). But, between the two, it does appear the larger disruption would be to Omundson.

### C. Public Interest

The public has an interest in the finality of cases and compliance with Court orders. It has an interest in upholding the Constitution and protecting the First Amendment. And it has an interest in not wasting taxpayers' funds—at any level. The Court finds the public interest is important on both sides and does not meaningfully weigh one way or the other in this case.

### V. CONCLUSION

As has been a theme throughout this case, the issue presently before the Court is difficult. Both sides have made valid arguments. This question is complicated because, on the one hand, a constitutional harm is at stake. On the other hand, however, the Court's injunction requires that Idaho revamp an entire state-wide system.

The Court does not like holding its decision in abeyance (and continuing a harm) simply because there is an appeal pending. That said, the Court also does not like the idea

of spending time, money, and resources unnecessarily.

After weighing the arguments, the Court finds that the likelihood of success prong and the harm prong tip *slightly* in Omundson's favor and justify a stay.

Accordingly, the Court will GRANT the Motion and stay implementation of its injunction pending resolution of Omundson's appeal.

## VI. ORDER

1. Omundson's Motion to Stay Injunction Pending Appeal (Dkt. 96) is GRANTED.

DATED: December 17, 2024

David C. Nye
Chief U.S. District Court Judge